930 F.2d 1390
 59 USLW 2623, 67 Ed. Law Rep. 124
 Thomas DAVIES, Plaintiff-Appellant,
v.
GROSSMONT UNION HIGH SCHOOL DISTRICT; Monte Vista High
School; Jennifer Eliott; Robert Pyle; Paul Martin;
Christopher Bogden; Gerald Gordinier; and Does 1 through
20, inclusive, Defendants-Appellees.
 No. 91-55140.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 5, 1991.
Decided April 8, 1991.
 
 Kenneth S. Klein, James T. Hannink, Gray, Cary, Ames & Frye, San Diego, Cal., for plaintiff-appellant.
 Richard J. Currier, C. Anne Hudson, Judith S. Islas, Littler, Mendelson, Fastiff & Tichy, San Diego, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before BROWNING, D.W. NELSON and REINHARDT, Circuit Judges.
 REINHARDT, Circuit Judge:
 This appeal challenges the enforceability of a contract provision restricting appellant's right to run for public office. The provision is contained in a settlement agreement between appellant and the governmental entity involved. That agreement in turn formed the basis for a "dismissal and release and order thereon." We hold that the public policy favoring enforcement of such a provision is outweighed by the public policy served by its non-enforcement. We therefore declare the provision void as contrary to public policy and reverse the district court's contempt order based on its violation.
 BACKGROUND
 The appellant, Dr. Davies, seeks reversal of the district court's order finding him in contempt of a 1989 order dismissing his previous action against the defendant Grossmont Union High School District (the "District") in accordance with a settlement agreement, and ordering him to resign immediately.
 In 1988, Dr. Davies and his wife sued the District in state court, alleging violations of 42 U.S.C. Sec. 1983 and various state law causes of action in connection with the District's transfer of Mrs. Davies, who had been employed as a teacher in the District. The District removed the action to the United States District Court for the Southern District of California, which remanded the pendent state claims on discretionary grounds. Dr. Davies erroneously remained a named plaintiff in the federal action, although his only claim, for loss of consortium, had been remanded.
 
 
 1
 In November 1988, both Dr. Davies and Mrs. Davies executed an agreement with the District, which served to settle the federal action. The agreement provided, inter alia, that the Davieses would dismiss their actions in state court and federal court against the District in return for a payment of $39,200. The agreement also provided that "neither one nor both of [the Davieses] will ever seek, apply for, or accept future employment, position, or office with Defendant District in any capacity." The district court approved the settlement agreement and dismissed the federal action in an April 11, 1989 written order. The Davieses subsequently dismissed the state action.
 
 
 2
 Over a year later, on August 2, 1990, Dr. Davies publicly declared his candidacy for the Governing Board of the District; he was elected to the Board on November 6, 1990. After the election, but before he was sworn in to office, the District brought a motion to enforce the settlement agreement in the district court, seeking an order of contempt against Dr. Davies for violating the April 1989 order. While the motion was pending, Dr. Davies took the oath of office in another county. After a hearing on December 12, 1990, the district court granted the motion and found him in contempt of the 1989 order. The district court ordered him to resign his office immediately and to pay attorney fees to the District. The court denied his request for a stay of its order pending appeal to this court. Dr. Davies resigned, effective December 13, 1990. The record does not reflect whether he paid the attorney fees.
 
 
 3
 Dr. Davies appealed to this court and sought an emergency stay of the district court's order, or in the alternative, an injunction preventing the District from filling his position on the Board during the pendency of his appeal. A speedy resolution of the issues raised was essential to both parties: if the Board appointed someone other than Dr. Davies to the seat he had relinquished, Dr. Davies might have lost his ability to withdraw his resignation; and so long as the seat remained vacant, the Board could not make crucial decisions necessary to the operation of the School District.[1] Therefore, upon stipulation of the parties, on January 30, 1991, a motions panel of this court ordered that the case be placed on the next oral argument calendar.[2] Further, in accordance with the parties' stipulation, temporary injunctive relief was granted. On February 11, 1991, we issued an unpublished order reversing the district court and vacating the contempt order and Dr. Davies' ensuing resignation. This opinion is issued in accordance with that order.
 
 ANALYSIS
 A. Jurisdiction
 
 4
 Dr. Davies asserts that the District may challenge his election only through the quo warranto proceedings afforded by state law. See Cal.Civ.Pro.Code Sec. 803. The district court had jurisdiction over this case, however, because district courts have power to enforce their own orders and to adjudge anyone in civil contempt who wilfully violates such orders. See United States v. Grant, 852 F.2d 1203 (9th Cir.1988).[3] Any available state remedy would not divest the district court of this inherent power to enforce its own orders.
 
 
 5
 We have jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1291 because the district court's post-judgment contempt order is a final order in the district court. See Grant, 852 F.2d at 1204. In addition, we are not deprived of jurisdiction by virtue of the fact that appellant resigned his office. Ordinarily, compliance with a contempt order renders the appeal moot because the appellate court is left with no remedy to afford the appellant. See Thomassen v. United States, 835 F.2d 727 (9th Cir.1987). However, there is an exception to the general principle: where compliance does not prevent this court from fashioning adequate relief, a live controversy exists and the appeal is not moot. See id. at 731-32 (where taxpayer complied with contempt order and paid attorneys' fees, appeal seeking return of fees was not moot). Here, Dr. Davies seeks reinstatement to the Board, relief which we can grant because his position is still vacant. Similarly, if he has paid the attorney fees, we can treat his appeal as seeking their return.
 
 
 6
 Moreover, the District bears the burden of showing that the case is moot, and that burden "is a heavy one." County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632-33, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). Here, as we have stated, the record does not reveal whether Dr. Davies has complied with the order to pay attorney fees. Therefore, the District has not met its burden with respect to the fee question and for that reason also cannot establish that the case is moot.
 
 
 7
 Finally, there is a third reason why the appeal is not moot. The clear import of the district court's order was not merely that Dr. Davies was to resign from the Board: the order effectively forbade him from ever seeking a position on the Board. He most certainly has not complied with that order. Thus, the order has prospective effects and is for that reason as well subject to challenge on appeal.
 
 B. Standard of Review
 
 8
 The punishment imposed in a civil contempt proceeding is subject to review for abuse of discretion. See United States v. Grant, 852 F.2d at 1205. However, the legitimacy of the contempt adjudication is based on the validity of the underlying order. See Scott & Fetzer Co. v. Dile, 643 F.2d 670, 675 (9th Cir.1981). Appellant here primarily challenges the enforceability of the underlying order upholding the settlement agreement (see section E below). We review de novo a legal challenge to the interpretation of a settlement agreement. See Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir.1989).
 
 C. Application of the Settlement Agreement
 
 9
 We first address appellant's argument that the settlement agreement should not bar his election because: (1) its terms do not apply to elective office; and (2) he did not knowingly intend to waive his constitutional right to run for office. We are not persuaded by these arguments.
 
 
 10
 The language of the settlement provision is clear. It states that Dr. Davies will "never seek or accept any office or position with the District in any capacity." "Any" is an all-encompassing term. Here, the parties used two "any's" in one sentence in order to make certain there would be no doubt as to their intent. As the district court pointed out in its December order, it is true that the provision does not explicitly refer to elective office, but it also does not explicitly refer to employment as a teacher. The reason for both omissions is that the terms are sufficiently clear that it is not necessary to list either of the prohibitions specifically. See Muckleshoot Tribe v. Puget Sound Power & Light, 875 F.2d 695, 698 (9th Cir.1989); Dart Industries Co. v. Westwood Chemical Co., 649 F.2d 646, 648 (9th Cir.1980). That "any office" includes elective office is a proposition that requires no further explication.
 
 
 11
 Likewise, Dr. Davies' argument that he did not knowingly waive his constitutional rights is without merit. The Supreme Court has recognized that constitutional rights may ordinarily be waived if it can be established by clear and convincing evidence that the waiver is voluntary, knowing and intelligent. See D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 185, 187, 92 S.Ct. 775, 782, 783, 31 L.Ed.2d 124 (1972). Dr. Davies relies only on the knowingness requirement here. Several factors, collectively, lead us to the conclusion that his waiver was knowing. First, he was represented by counsel during settlement negotiations. Second, the settlement agreement which he signed stated that he had been advised of the consequences of its terms and knowingly entered into the agreement. Third, it seems evident that Dr. Davies, a highly educated person must have understood the plain meaning of the term "seek or accept any office." Accordingly, we cannot accept his contention that he thought it meant "seek or accept any office but elective office." Dr. Davies' affidavits attesting that he did not intend such a waiver and that elective office was not an issue at the time the settlement was reached because he did not then live in the district are irrelevant. It is possible to knowingly waive a general right without contemplating the specific circumstances under which that waiver will be enforced.[4] We therefore conclude that Davies' waiver was knowing.
 
 D. Waiver or Estoppel by the District
 
 12
 We next address appellant's argument that the District waived its right under California law to enforce the settlement agreement because it did not object to the public announcement of his candidacy in August, but waited until after he was elected to challenge his right to hold office under the agreement. Dr. Davies' argument may alternatively be characterized as one of estoppel: essentially he contends that he understood the Board's failure to attempt to enforce the agreement during the entire period of the election campaign to mean that the Board was relinquishing its right to do so, and that by spending time and money campaigning for office, he detrimentally relied on the Board's implicit representation. See Adams v. Johns-Manville Corp., 876 F.2d 702, 707 (9th Cir.1989) (setting forth the elements of estoppel under California law).[5]
 
 
 13
 To establish a waiver by the District of its right to enforce the settlement agreement, Dr. Davies must show either: that the District, with full knowledge of the facts and an intent to waive the right, made a clear expression of its intent; or that he has carried his burden of establishing that the District's conduct warrants the inference that it has relinquished that right. See Sawyer v. County of Sonoma, 719 F.2d 1001, 1008 (9th Cir.1983) (citing White Point Co. v. Herrington, 268 Cal.App.2d 458, 468-69, 73 Cal.Rptr. 885, 891 (1968)).
 
 
 14
 The District contends that it did not knowingly waive its right because the Superintendent--the individual responsible for verifying the eligibility of Board candidates--assumed his office after the settlement agreement was approved by the district court, and did not have knowledge of its terms: the parties agree that the settlement agreement was sealed in 1989. On the other hand, Dr. Davies has presented affidavits tending to show that some of the current Board members knew about the agreement at the time Davies declared his candidacy.
 
 
 15
 It is apparent that both the waiver inquiry and the estoppel inquiry require "factually intensive" showings by Dr. Davies. E.g., Adams, 876 F.2d at 707 (estoppel). Because of the urgency of the motion in the court below, see supra, n. 1; see also supra, n. 2, the district court neither conducted a hearing nor made factual findings with respect to either waiver or estoppel. As a result, we are unable to conclude on the basis of the current record that the District waived its right to enforce the agreement or that the District should be estopped.[6]
 
 E. Public Policy
 
 16
 Dr. Davies' fundamental argument involves a public policy issue of first impression. He asserts that the provision precluding him from seeking or holding elective office violates public policy, and therefore should not be enforced. He contends that enforcement would violate his constitutional right to run for elective office and the constitutional right of the voters to elect him. We agree.
 
 
 17
 The question whether the waiver of federal constitutional rights is enforceable is a question of federal law, which we resolve by the application of federal common law.[7] See Town of Newton v. Rumery, 480 U.S. 386, 392, 107 S.Ct. 1187, 1192, 94 L.Ed.2d 405 (1987). Rumery involved the question whether a release of individual rights in a private settlement agreement with a public official violated public policy. The Court held that "a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." 480 U.S. at 392, 107 S.Ct. at 1192. See also Restatement (Second) of Contracts Sec. 178 (1981) (if no legislation regulates the conduct at issue, courts must weigh the parties' and public interest in enforcement of the contract against the strength of the public policy implicated by the contract and the furtherance of such policy by failure to enforce the contract).
 
 
 18
 In Rumery, an individual charged with criminal tampering with a witness to a sexual assault prosecution entered into an agreement with the prosecutor, whereby the criminal charges against him were dropped in return for his waiver of all rights to bring a civil action against the prosecutor. The Supreme Court held that such agreements are not per se unenforceable and that the particular agreement at issue in that case had been knowingly and voluntarily entered into. The Court then proceeded to apply the balancing test, finding that the public interest in enforcement of the agreement outweighed the policies furthered by non-enforcement.
 
 
 19
 A brief description of how the Court struck the balance in Rumery is instructive here. Several factors favored enforcement: the Court found that the agreement accomplished the efficient resolution of criminal charges, the avoidance of a questionably valid civil action at great expense to the public to defend, and the avoidance of embarrassment to and public scrutiny of the witness, who had been the complainant in a sexual assault case. On the other side of the scale, the Court acknowledged the concern that the availability of such agreements might tempt prosecutors to trump up criminal charges against individuals in an attempt to coerce them into releasing their rights under 42 U.S.C. Sec. 1983, but found that such concerns were not justified in that case, where there was no evidence of such misconduct. Most significantly for our purposes, in Rumery the Court relied on the fact that the rights released by Rumery were, in the Court's view, mere private rights: thus the Court believed that the surrender of these rights did not have a significant impact upon the public at large. It found that there was no broad public interest that outweighed Rumery's voluntary decision to enter into an otherwise valid agreement. Id. at 394-95, 107 S.Ct. at 1193.
 
 
 20
 While Rumery involved the surrender of a statutory remedy, here we confront the waiver of a constitutional right. This suggests two important distinctions between Rumery and the present case. First, because constitutional rights are generally more fundamental than statutory rights, a stricter rule than the one embodied by the Rumery balancing test may be appropriate in such cases. Second, foregoing a remedy of money damages for a past injury that cannot be undone may not implicate the public interest to the same extent as does the surrender of the right itself. It could well be argued therefore that the District must meet a higher burden here than is required under the Rumery test. However, we need not decide whether Rumery or a stricter standard applies to waivers of constitutional rights, because even under the Rumery test we find that the waiver provision is unenforceable.
 
 
 21
 Assuming without deciding that the Rumery standard is applicable, we must determine whether the District has demonstrated that the public interest is better served by enforcement of the settlement agreement than by non-enforcement.[8] We first consider the public policies favoring non-enforcement of the challenged waiver provision. There is no question that the public interest at stake in this case is of the highest order. It involves the most important political right in a democratic system of government: the right of the people to elect representatives of their own choosing to public office. The United States Supreme Court has repeatedly held that the individual's right to seek public office is inextricably intertwined with the public's fundamental right to vote, and may be limited only where necessary to achieve a compelling state purpose. See Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (holding that an early filing requirement placed an unconstitutional burden on independent candidates and on the voting rights of his supporters); Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974) (holding that the state must provide alternative to fee requirement for indigent candidates); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (invalidating fee requirement as unreasonable burden on candidates). See also Mancuso v. Taft, 476 F.2d 187 (1st Cir.1973) (right to run for office is protected by First Amendment). See also cases cited in n. 7, supra.[9]
 
 
 22
 It is therefore clear that the right claimed by Dr. Davies is, by its nature, one that implicates the public interest. A restriction of Dr. Davies' right to run for or serve on the Board results in a limitation on the fundamental right to vote of every resident of Grossmont Union High School District. This is precisely the sort of effect on the public at large that was absent in Rumery, 480 U.S. at 395, 107 S.Ct. at 1193.[10] We conclude that here the public interest favoring non-enforcement is of critical importance.
 
 
 23
 We now address the factors that favor enforcement. The District asserts two public policy considerations that, it contends, support upholding the waiver in this case. The first is a policy favoring enforcement of private agreements and the encouragement of settling litigation. See Kiddie Rides, Inc. v. Southland Engineering, Inc., 361 F.2d 575 (9th Cir.1966). This policy interest is admittedly important. However, it is an interest that will be present in every dispute over the enforceability of an agreement terminating litigation. In a case presenting no public interest that would be harmed by enforcement of the waiver provision, the countervailing interest in settlement will be enough to justify enforcement. But where a substantial public interest favoring nonenforcement is present, the interest in settlement is insufficient. Otherwise, there would be no point to the Rumery balancing test: since the interest in settlement is present in every case, every settlement agreement would be enforced. Clearly then, when there is a substantial public interest that would be harmed by enforcement--as is unquestionably the case here--the party seeking enforcement must, at the least, advance some important interest in addition to the interest in settlement.
 
 
 24
 Here, the only interest advanced by the District other than the general interest in the settlement of litigation is its assertion that its constituents would be harmed by Dr. Davies' participation in the operation of the District. In effect, the District's argument comes down to a rather startling rationale: Dr. Davies is such a troublesome person that the voters should not be free to elect him as their representative. Not only do we find this rationale for enforcement utterly unpersuasive: it is pernicious. Although we have denominated the defendant in this case "the District," we cannot overlook the fact that the real parties in interest urging enforcement of the settlement agreement are the current members of the Board, with whose policies Dr. Davies vigorously disagrees.
 
 
 25
 The current Board members may sincerely believe that their policies are correct and that they know better than the voters who should be on the Board--and perhaps they are right. Democracy does not, after all, guarantee good government or even the election of well qualified individuals. We have certainly experienced enough examples of this unfortunate fact over the past two hundred-odd years. However, democratic government is premised on the proposition that the people are the best judges of their own interests, and that in the long run it is better to permit them to make their own mistakes than to permit their "rulers" to make all their decisions for them. As judges sworn to uphold the Constitution we must accept this view. Within the bounds set by the United States Constitution and the state constitutions, the will of the majority must prevail. There is no suggestion that Dr. Davies' participation on the School Board would transgress those bounds. Therefore, we reject the District's definition of a public interest at odds with the public will.
 
 
 26
 We must reject the District's second argument for another reason as well. To treat political rights as economic commodities corrupts the political process. Just as we would not enforce a contract stating that voter X will vote for candidate Y in exchange for a sum of money, so too we will not enforce an agreement whereby a citizen receives money in exchange for a promise not to exercise his right to run for office. As harmful as such agreements are in general, they are particularly offensive where, as here, the parties authorizing the payment are elected officials and the recipient is a potential political opponent. This sort of arrangement is a serious abuse of the power of incumbency. Cf. Sheppard v. Lee, 929 F.2d 496 (9th Cir.1991) (terming County Supervisors' firing of a county employee because he planned to run for the position of Supervisor "inconsistent with our tradition of fair and free elections" and stating that "[t]he Supervisors' efforts to perpetuate themselves in office and to burden the rights of those who would oppose them are offensive to basic democratic principles"); Garza v. County of Los Angeles, 918 F.2d 763, 778 (9th Cir.1990) (Kozinski, J., concurring and dissenting in part) (describing the dangers posed by "elected officials engaged in the single-minded pursuit of incumbency"), cert. denied, --- U.S. ----, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991).
 
 
 27
 Because the second interest purportedly served by enforcement of the provision carries no weight, the District is left with only its previously discussed interest in the settlement of litigation. As we stated earlier, this interest cannot by itself outweigh a substantial public interest on the other side of the scales. We conclude that in the case before us the public policy favoring nonenforcement vastly outweighs any interest in enforcement.
 
 
 28
 Finally, we note that there is a further reason why we refuse to enforce the waiver provision in this case. Before the government can require a citizen to surrender a constitutional right as part of a settlement or other contract, it must have a legitimate reason for including the waiver in the particular agreement. A legitimate reason will almost always include a close nexus--a tight fit--between the specific interest the government seeks to advance in the dispute underlying the litigation involved and the specific right waived.[11] For example, in Rumery the interests the government sought to advance in the underlying litigation were closely related to the underlying interest waived. Both the criminal charges that had been filed against Rumery and Rumery 's civil suit against the prosecutor involved the same incident. In fact, they were the opposite sides of the coin. The two actions reflected the opposing parties' differing versions of what actually occurred. Thus, in Rumery, a full compromise of the dispute between the parties necessitated resolving both matters. Here, by contrast, the nexus between the individual right waived and the dispute that was resolved by the settlement agreement is not a close one. The underlying dispute had little connection with Dr. Davies' potential future service on the Board. Had it not been for the District's insistence on the inclusion of the waiver provision in the settlement agreement, Dr. Davies' right to run for elective office could not have been affected by a resolution of the litigation. Nevertheless, the District extracted a waiver of Dr. Davies' right ever to seek or accept a position on the Board as a condition to settling the lawsuit.
 
 
 29
 The absence of a close nexus will ordinarily show that the government is seeking the waiver of important rights without a legitimate governmental interest that justifies doing so. Although there may be circumstances in which the public interest that would be served by enforcement of a settlement agreement is so strong that it outweighs the absence of a close nexus, such cases are the exception rather than the rule. Here, the government has put forward no public interest that would rebut the presumption of unenforceability. Accordingly, in addition to the reasons we have previously expressed, we conclude that the waiver is unenforceable because of the absence of a close nexus.
 
 CONCLUSION
 
 30
 The District has failed to advance a public interest in enforcement of Dr. Davies' waiver of his right to seek and hold office sufficient to outweigh the public's interest in maintaining the full and fair right to vote. Consequently, we hold that the waiver provision in the settlement agreement between the District and Dr. Davies is void insofar as it purports to bar him from ever seeking or holding elective office in the District. This does not affect the validity of the remainder of the agreement, which contains an express severability provision, under the terms of which any part of the agreement which is declared void shall not invalidate any other part of the agreement. See ICN Medical Laboratories, Inc. Employees' Profit Sharing Plan v. ICN Medical Laboratories, Inc., 682 F.2d 1326 (9th Cir.1982).
 
 
 31
 The district court's December 12, 1990 order finding Dr. Davies in contempt of the 1989 order dismissing the prior action pursuant to the settlement agreement is vacated, including the provision for the payment of attorneys fees. Dr. Davies' resignation tendered pursuant to that order, effective December 13, 1990, is of no force or effect. Any fees he may have paid to the District pursuant to the district court's order shall be returned to him.
 
 
 32
 REVERSED and VACATED.
 
 
 
 [1]
 The Board ordinarily consists of five members. Because Dr. Davies' seat was vacant, there were only four members. Of these, one was unavailable because he had been called to military duty as part of Operation Desert Storm. This left only three active members. Yet, under California law, various actions may not be taken without four votes. See e.g., Cal.Educ.Code Secs. 39481, 39521. Numerous others require at least three votes. See e.g., Cal.Educ.Code Secs. 35164, 44830, 45022, 45103
 
 
 [2]
 At the oral argument on February 6, 1991, counsel for the District stated that in the week between our grant of temporary relief and the argument, one of the three active Board members had died, making a swift resolution of the appeal even more urgent. See supra, n. 1
 
 
 [3]
 Davies argues that the district court's April 1989 order did not incorporate the settlement agreement, and therefore cannot form the basis for a contempt order based on that agreement. We have noted that a district court may enforce a settlement agreement "in contempt proceedings for violation of a court order approving the settlement and commanding or enjoining particular conduct." TNT Marketing, Inc. v. Agresti, 796 F.2d 276, 278 (9th Cir.1986). The April 1989 order that formed the basis for the contempt proceeding was part of a "dismissal and release and order thereon." While the "dismissal and release" portion of that document expressly acknowledges and incorporates the 1988 settlement agreement and releases all parties from further obligation in reliance on the agreement, the order merely directs that the dismissal and release be entered in the official docket. This presents a legal question: may a court order dismissing a case based on a settlement agreement form the basis for a judgment of contempt for failure to abide by the agreement when the order does not by its own terms direct the parties to abide by the agreement?
 Dr. Davies first raised this issue cursorily in a supplemental brief to which the District did not have an opportunity to respond. Neither party addressed the issue during oral argument. The district court, of course, had no opportunity to consider it at all. Accordingly, we are reluctant to decide the question in this case. Because we hold below that the challenged provision of the settlement agreement was unenforceable in any event, it is unnecessary for us to do so.
 
 
 [4]
 See also Erie Telecommunications, Inc. v. City of Erie, 853 F.2d 1084, 1097-98 (3rd Cir.1988) (enforcing contractual release of constitutional claims, including supposedly "unknown" claims, where the release unambiguously applied to "any" claims)
 
 
 [5]
 The parties have relied on California law in briefing this question. As we hold below, on the basis of the present record Dr. Davies cannot prevail on the waiver/estoppel issue under California law. Because the federal standard is more stringent than the state standard, Sawyer v. County of Sonoma, 719 F.2d 1001, 1006 n. 11 (9th Cir.1983), our holding necessitates the conclusion that Dr. Davies cannot establish his defense under federal law either. Accordingly, we need not decide whether California law or federal law applies
 
 
 [6]
 As a practical matter, the urgency of this appeal foreclosed the possibility of remanding the proceedings to the district court for the development of a more complete factual record. See supra, n. 1, n. 2. Because we hold below that the challenged provision of the settlement agreement is unenforceable as against public policy, Dr. Davies is entitled to the relief he seeks regardless of whether he could have ultimately prevailed on a defense of waiver or estoppel. Thus, a remand would in any event have served no purpose
 
 
 [7]
 Dr. Davies also argues that the provision at issue is unenforceable under California law, citing decisions of the California Supreme Court invalidating restrictions on the right to run for office. See, e.g., Bagley v. Washington Township Hospital Dist., 65 Cal.2d 499, 421 P.2d 409, 55 Cal.Rptr. 401 (1966) (striking down rule requiring public employee to resign upon declaration of candidacy for public office); Kinnear v. City and County of San Francisco, 61 Cal.2d 341, 392 P.2d 391, 38 Cal.Rptr. 631 (1964) (same); Fort v. Civil Service Comm'n, 61 Cal.2d 331, 392 P.2d 385, 38 Cal.Rptr. 625 (1964) (same). That is very likely the case. However, the cited decisions are based on the California Supreme Court's interpretation of the federal Constitution. While the Fort court mentions art. I, Sec. 2 of the California Constitution, 38 Cal.Rptr. at 627, 392 P.2d at 387, its decision appears to stem entirely from considerations relating to the first amendment to the federal Constitution, as do the decisions in Kinnear and Bagley. We find these three decisions highly persuasive, but they are not in themselves compelling precedent for the proposition that there is a separate basis in state law for not enforcing the challenged provision
 
 
 [8]
 In Rumery five Justices (the four dissenters plus Justice O'Connor, who concurred) expressly placed the burden of proof with respect to enforceability of a waiver of a civil right on the government. Subsequently, we made clear that the view of these five Justices is the law in this circuit. See Lynch v. City of Alhambra, 880 F.2d 1122, 1125-26 (9th Cir.1989). However, the burden of proof is not dispositive here. We would hold the challenged provision of the settlement agreement unenforceable regardless of which party bore the burden of proof
 
 
 [9]
 As the Supreme Court has recognized, notwithstanding the fact that the rights of voters are fundamental, "the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." Anderson, 460 U.S. at 788, 103 S.Ct. at 1569. This need to regulate the process of holding elections will generally justify the enforcement of "complex election codes [that] govern[ ] the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself...." Id. See, e.g., Burdick v. Takushi, 927 F.2d 469 (9th Cir.1991) (upholding Hawaii's election procedures notwithstanding the absence of a provision for write-in ballots). There is no suggestion that the restriction on voters' rights that would result from enforcing Dr. Davies' waiver of his right to run for the Board is justified by, or even relates to, the state's interest in governing the mechanics of an election
 
 
 [10]
 We do not mean to suggest that in order to implicate the public interest the deprivation of a constitutional right must result in a distinct injury to the public at large. The deprivation of the individual's right may well in itself be sufficient to constitute a public injury. Even in Rumery the Court found that there was "a public policy harmed by enforcement," 480 U.S. at 392, 107 S.Ct. at 1192, as a result of the injury to the individual, although the Court concluded in that case that the particular harm was outweighed by public policies favoring enforcement
 
 
 [11]
 This case concerns a settlement agreement with a government entity. We do not here consider the proper role of nexus in agreements involving only private parties