UNITED STATES of America, Plaintiff–Appellee,

v.

Allan Marvin BERKE, Defendant–Appellant.

No. 97–15769.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 17, 1998.

Decided March 16, 1999.

Paul Gaffney, Williams & Connolly, Washington, D.C., for the defendant-appellant.

Wendy M. Keats, United States Department of Justice, Washington, D.C., for the plaintiff-appellee.

Before: SNEED and FLETCHER, Circuit Judges, and WALLACH,[1] Judge, United States Court of International Trade.

Opinion by Judge FLETCHER; Concurrence by Judge SNEED; Dissent by Judge WALLACH.

FLETCHER, Circuit Judge:

Allan Berke ("Berke") appeals the district court's denial of his motion pursuant to Federal Rule of Civil Procedure 60(b) to vacate a portion of a consent decree as void. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). Because we conclude that Berke's attack on the decree may not properly be brought under Rule 60(b)(4), we affirm.

Berke and four co-defendants were indicted in 1989 for violations of federal obscenity laws and operation of a criminal enterprise. As part of a plea agreement, Berke in June 1991 agreed to a consent decree (to which the parties stipulated following the initiation of a parallel civil RICO action) permanently enjoining him from involvement with the production, sale, or distribution of any sexually explicit materials. There is no dispute that the terms of the consent decree reach not only obscene materials, but also sweep in non-obscene sexually-explicit materials otherwise protected by the First Amendment. Some five years later, in July 1996, Berke filed a motion pursuant to Rule 60(b) seeking to vacate the consent decree, arguing that the injunction was "void" because it violated his First Amendment rights.[2] See FED. R. CIV. P. 60(b)(4). The district court denied his motion.

A final judgment is "void" for purposes of Rule 60(b)(4) only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law. See In re Ctr. Wholesale, Inc., 759 F.2d 1440, 1448 (9th Cir.1985); Jones v. Giles, 741 F.2d 245, 248 (9th Cir.1984). "A judgment is not void merely because it is erroneous." In re Ctr. Wholesale, Inc., 759 F.2d at 1448. Berke does not claim that there was any infirmity in the jurisdiction of the court that entered the consent decree. He does contend, however, that the proceedings relating to the entry of the decree fell short of the requirements of due process, insofar as the district court failed to establish explicitly, on the record, his voluntary waiver of the First Amendment rights potentially implicated by the consent

---

1. Honorable Evan J. Wallach, United States Court of International Trade Judge, sitting by designation.

2. IN HIS MOTION BELOW, BERKE ALSO ARGUED IN THE ALTERNATIVE THAT THE JUDGMENT WAS NO LONGER EQUITABLE, see FED. R. CIV. P. 60(B)(5), AND THAT THE COURT SHOULD EXERCISE ITS DISCRETION TO RELIEVE HIM FROM THE OPERATION OF THE JUDGMENT, see FED. R. CIV. P. 60(b)(6). He has not raised these arguments on appeal.

decree. Given the record below, we have no difficulty concluding that Berke knowingly and voluntarily waived his First Amendment rights in connection with the entry of the consent decree.[3]

The dissent mounts an eloquent and forceful attack on the merits of the injunction. This appeal, however, does not call on us to pass on the propriety of the course chosen by the prosecutors in the underlying action. We also express no opinion on the enforceability of the consent decree, should contempt charges ever be brought against Berke for its violation. *Cf. Davies v. Grossmont Union High Sch. Dist.,* 930 F.2d 1390, 1396–97 (9th Cir.1991) (finding unenforceable a settlement agreement that compromised the constitutionally-protected interests of the public). Consequently, our holding today is not the "dangerous precedent" the dissent fears; rather, we follow the established law of this circuit and hold simply that Rule 60(b)(4) does not compel reversal of the district court's ruling below. Whatever its other shortcomings, the consent decree at issue here is not "void" within the meaning of Rule 60(b)(4). *See Tomlin v. McDaniel,* 865 F.2d 209, 210 (9th Cir.1989).

AFFIRMED.

SNEED, Circuit Judge, concurring:

While I join Judge Fletcher's opinion, it is proper for me to observe that the dissent, in my eyes, while eloquent, is not as forceful as perhaps it appears to be to Judge Fletcher. Nevertheless, subject to that observation, I concur in her opinion.

WALLACH, Judge, dissenting:

It seems a law of nature, that the vilest forms of life prove so useful in maintaining the balance of their ecosystems. Bacteria which dispose of wastes and vultures of carrion both spring readily to mind. So it seems to be with pornographers such as Allan Marvin Berke ("Berke") and the First Amendment to the Constitution of the United States.

At issue in this case is a prior restraint on Berke's involvement with sexually explicit material that is fully protected by the First Amendment. In contrast to a criminal penalty or civil judgment following a trial, where the full impact of a law's sanction is deferred until all procedural and substantive issues have been heard by a court and exhausted on appeal, a prior restraint, "by contrast and definition, has an immediate and irreversible sanction." *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Because prior restraints, like the one at issue, involve an ever present threat of criminal contempt for disobeying a court order, such restraints have traditionally been perceived as more effective in suppressing expression than the threat of subsequent punishment. *See id.* at 559, 96 S.Ct. 2791. *See also* Lawrence H. Tribe, *American Constitutional Law* 1042 n.2 (2nd ed.1988) (noting that, even if a defendant was allowed to assert a constitutional defense in a prosecution for violating a court order, "it might well remain the case that prepublication restraints, especially those affirmatively singling out the would-be disseminator, would deter far more protected conduct than criminal statutes ordinarily would."). As the Court noted in *Nebraska Press Ass'n,* 427 U.S. at 559, 96 S.Ct. 2791 (citing A. Bickel, *The Morality of Consent* 61 (1975)), "[i]f it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." For this reason, a long line of Supreme Court precedent has made clear that prior restraints constitute "the most serious and the least tolerable infringement" of First Amendment rights and, as such, are presumptively

---

3. The district court established in open court that Berke had discussed the consent decree with his attorneys, that he had read it, and that he understood it. The court went on to elicit from the prosecution a description of the consent decree, a description that clearly indicated that the injunction at issue was a central feature of the decree. The court then asked a second time if Berke understood the terms of the agreement.

We also note that Berke in his papers never contends that he *actually* did not understand the agreement. Rather, he would have us adopt a *per se* prophylactic rule requiring a formal colloquy before the district court, notwithstanding his knowing and voluntary waiver here.

unconstitutional. *Nebraska Press Ass'n,* 427 U.S. at 559, 96 S.Ct. 2791.

For this reason, it is likely that had this restraint been imposed following a criminal or civil trial, and challenged on direct appeal, the government would be unable to justify a permanent restraint on Berke's First Amendment right to deal in sexually explicit—though not obscene—materials. Rather than appealing a court order directly, however, Berke is bringing a collateral attack on the Consent Decree that he entered into with Federal prosecutors. As the government observes, this is essentially an effort "to deprive the government of the chief benefit it bargained for in return [for dropping its criminal prosecution]—the permanent removal of [Berke's] corrupting influence from the pornography industry." Brief For The Appellee at 20. In addition, Berke's challenge also appears to directly contradict the well-established principle that most constitutional rights can be freely waived upon a showing of clear and compelling evidence. *Id.*

While these and other arguments advanced by the government are not without merit, they do not change the fact that Berke only agreed to waive his First Amendment rights, and the District Court only entered the resulting Consent Decree, after Burke was threatened with criminal prosecution for violating the Racketeer Influenced And Corrupt Organizations statute ("RICO"), 18 U.S.C. §§ 1961–68 (1988), and with indictment for federal income tax violations. In February 1989, Burke was indicted by a grand jury on ten counts of violating federal obscenity laws and operating a criminal enterprise. Brief For The Appellee at 5. Faced with the prospect of a criminal trial and a further indictment for income tax fraud, on March 18, 1991, Burke resolved the criminal charges against him by (1) pleading guilty to racketeering, obscenity, and tax charges; (2) agreeing to serve one year in jail and pay a fine of $150,000; (3) divesting himself of his interest in certain entities; and (4) forfeiting his interest in various real and personal property. Brief of Appellant at 2–3; Mem. of Plea Agreement, CR 5, Tab 1, at 19–23. Of particular importance for present purposes, the settlement with the government was also made contingent on Berke agreeing, *inter alia,* to "forever remain unconnected to such [pornographic and adult] businesses and industry anywhere in the United States," Mem. of Plea Agreement, CR 5, Tab 1, at 14, and:

> refrain from owning, having, maintaining, seeking, participating in, or providing advice or consulting assistance concerning, any equitable, managerial, or other interest in, investment in, or employment with, any enterprise, establishment, or business that promotes, sells, or distributes, or otherwise makes, markets, or disseminates, the above described [pornographic and adult] materials anywhere in the United States.

*Id.* at 22–23. There is no dispute that this language covers non-obscene activity that is protected by the First Amendment.

Because the government made waiver of Berke's First Amendment rights a condition of ending its criminal prosecution—and because the Consent Decree continues to "freeze" Berke's First Amendment rights—I believe that, notwithstanding Berke's knowing waiver of his rights, that part of the Consent Decree which acts as a prior restraint upon Berke's First Amendment rights should be declared "void" as contrary to public policy. As this Circuit found in *Davies v. Grossmont Union High School District,* " 'a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.' " 930 F.2d 1390, 1396 (9th Cir.1991) (quoting *Town of Newton v. Rumery,* 480 U.S. 386, 392, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987)).

*Davies* involved the validity of a court-approved settlement in which the appellant and his wife, in exchange for a cash payment from a local school district, agreed to dismiss their civil rights claims against the district and agreed never to " 'seek, apply for, or accept future employment, position, or office with Defendant District in any capacity.' " *Davies,* 930 F.2d at 1392 (quoting the agreement between the Davies and the school district). Later, appellant ran for and was elected to a seat on the school district's board, whereupon the school district success-

fully moved to have him found in contempt of the earlier order. In reversing this contempt order, this Circuit concluded that because the school district had failed to demonstrate that the public interest was better served by enforcement of the settlement agreement than by its non-enforcement, the agreement was "void insofar as it purports to bar [the plaintiff] from ever seeking or holding elective office in the District." *Id.* at 1400. This conclusion was based on the Court's findings that while the restriction at issue "result[ed] in a limitation on the fundamental right to vote of every resident of Grossmont Union High School District," the school district did not have a legitimate offsetting interest in the restriction's enforcement. *Id.* at 1398.

In arguing that the prior restraint should not be declared "void" under *Davies,* the government says that:

> the government's compelling interest in preventing organized criminal activity is a sufficient justification for barring individuals like defendant from participating in the industry they have corrupted, even if it imposes necessary incidental limitations on such individuals' First Amendment rights.

Brief For The Appellee at 51; *see also id.* at 32–34 (discussing how "[t]he requirement that [Berke] permanently remove himself from the business of dealing in pornography in any way, notwithstanding the impact on his First Amendment rights, is thus no more than is reasonably necessary to 'prevent and restrain' him from further illegal conduct in the pornography industry and to assure the public freedom from its continuance.").

It is certainly true that preventing organized criminal activity is a compelling governmental interest of the highest order. Despite the "compelling" nature of this interest, however, the benefit of holding Berke to his agreement in this circumstance is significantly outweighed by the harm that enforcing this agreement would cause to the constitutional policy considerations recognized in *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), and its progeny. As discussed earlier, it has long been established that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n,* 427 U.S. at 559, 96 S.Ct. 2791. While the Supreme Court has consistently rejected the proposition that a prior restraint can never be employed, *see, e.g., id.* at 570, 96 S.Ct. 2791, it has also repeatedly noted that "[a]ny prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity." *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971) (citing *Carroll v. Princess Anne,* 393 U.S. 175, 181, 89 S.Ct. 347, 21 L.Ed.2d 325 (1969); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963)). For this reason, prior restraints may only be upheld if the government establishes that (1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available. *Levine v. United States Dist. Court For Cent. Dist. Of California.,* 764 F.2d 590, 595 (9th Cir.1985). Although most cases involving prior restraints have involved actions by the judicial and legislative branches of government, it has been well-established that these standards apply equally to the executive branch of government. *See, e.g., Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963) (finding that a system of prior administrative restraints on the circulation of adult publications constituted "[a] system of prior restraints of expression [that] comes to this Court bearing a heavy presumption against its constitutional validity"); *cf. Penthouse Int'l, Ltd. v. McAuliffe,* 610 F.2d 1353 (5th Cir.1980) (finding that a Georgia Solicitor General's scheme of harassing retailers of adult materials constituted a prior restraint that violated the First Amendment).

In this case, the prior restraint on Berke's protected speech fails to satisfy any of the *Levine* criteria. First, there is no evidence before this Court—nor was there ever any before the District Court—that Berke's dealings with constitutionally-protected materials posed, or currently pose, "a clear and present danger" or a "serious and imminent threat"

to the competing interest advanced by the government: preventing organized criminal activity. Simply dealing in non-obscene, sexually-explicit materials is a constitutionally-protected activity that, in and of itself, could not ever be considered criminal activity. And, while it might be true that such a broad prior restraint might help keep Burke from relapsing into criminal activity, no evidence has ever been introduced to justify such a measure. Instead, the government has *only* argued, in the broadest of terms, that its interest in preventing organized criminal activity by "individuals *like* defendant," Brief For The Appellee at 51 (emphasis added), is a sufficient justification for this particular prior restraint.

In so arguing, the government here has engaged in its own "Dance of the Seven Veils;" what it reveals is not half as interesting as what it fails to disclose. The government's prosecution in no way shows that "a clear and present danger" or a "serious and imminent threat" justified the government in seeking a waiver of Plaintiff's First Amendment right to deal in protected materials. Nor does it show that the District Court considered whether such factors were present in approving the consent agreement. Accordingly, it does not appear that the government has ever demonstrated either how or why a broad restraint on Berke's First Amendment rights either is, or ever was, necessary.

As for the other *Levine* factors, it seems clear that the "remedy" sought and achieved by the government was not narrowly drawn, and that less restrictive alternatives were, in fact, available. The government could simply have sought Berke's agreement not to deal in illegal pornographic materials, or it could have sought a term of probation during which Mr. Berke's constitutionally-protected dealings in sexually explicit materials could have been restricted. Rather than seeking these viable alternatives more directly related to Berke's crimes, the government insisted that Berke agree that "he will forever remain unconnected to such [pornographic and adult] businesses and industry anywhere in the United States." Mem. of Plea Agreement, CR 5, Tab 1, at 14. Certainly, such a broad prohibition is not a narrowly drawn restriction to which there were no less restrictive alternatives.

Despite this failure by the government to adequately justify why it was seeking a prior restraint, the District Court nevertheless entered the resulting Consent Decree. In doing so, it erred in not looking behind the "consensual" nature of this agreement and focusing on the considerable leverage the government brought to bear against Berke. As the Supreme Court emphasized in *Bantam Books*, 372 U.S. at 67, 83 S.Ct. 631, it is often necessary for courts to "look through forms to the substance" where informal forms of government censorship are involved. *See Penthouse*, 610 F.2d 1353 (finding that the removal by retailers of adult magazines could not be considered "voluntary," when such retailers were faced with a pattern harassment, including warrantless arrests, on the part of the Georgia Solicitor General's Office); *Council For Periodical Distributors Ass'n v. Evans*, 642 F.Supp. 552, 563 (M.D.Ala.1986), *aff'd in part and vacated in part*, 827 F.2d 1483 (11th Cir.1987) (quoting *Bantam Books*, 372 U.S. at 67, 83 S.Ct. 631) (" 'look[ing] through forms to the substance' to determine whether a decision to withdraw publications from sale was voluntary or involuntary").

Given the fact that Berke agreed to the prior restraint only under the threat of criminal prosecution, it was incumbent upon the District Court, in incorporating the civil consent judgment into the plea agreement in March 1991, to ensure that the government satisfied the rigid substantive requirements of *Levine* in seeking its prior restraint. No such inquiry, however, took place. Similarly, the District Court should have engaged in such an inquiry in considering Berke's Request For Relief From Judgment. Again, rather than doing so, on April 15, 1997, the District Court simply concluded that the restriction on Berke's constitutionally-protected speech was "reasonably related to the ongoing protection of the public." District Court Order of April 15, 1997, CR 18 at 2. That reasoning simply does not demonstrate that Berke's dealing in all sexually explicit material posed a clear and present danger, or

a serious and imminent threat, to the government's interest in preventing organized criminal activity. Nor does it demonstrate that the requested court order was narrowly drawn and that less restrictive alternatives were not available.

Of course, it is a well established principle that "[a] judgment is not void merely because it is erroneous." 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2862 (2d ed.1995). Accordingly, the fact that the District Court initially erred in approving the prior restraint portion of the Consent Decree does not, in and of itself, justify a finding that that part of the Consent Decree should now be declared "void" as contrary to public policy. Two important considerations, however, flow from this erroneous judgment, and lead to my belief that the prior restraint portion of the consent decree should be declared unenforceable.

First, by not declaring the non-obscene portion of the prior restraint "void" as contrary to public policy, I fear that this Court has affirmed an extraordinarily dangerous precedent allowing prosecutors to achieve a policy objective—the permanent suppression of constitutionally-protected speech, through the threat of criminal contempt proceedings, that they could not achieve through a criminal trial. As noted earlier, had the prior restraint been issued following a criminal conviction, and challenged on direct appeal, it is highly unlikely that it could have survived the "heavy presumption" against its validity. Similarly, in numerous instances, prosecutors around the country have been enjoined from threatening and/or engaging in criminal prosecutions unless an individual or business agreed to stop dealing with constitutionally-protected, sexually explicit materials. *See, e.g., PHE, Inc. v. United States Dep't of Justice,* 743 F.Supp. 15 (D.D.C.1990); *Council For Periodical Distributors Ass'n,* 642 F.Supp. 552.

In this instance, of course, Plaintiff does not seek to enjoin a threat of prosecution, nor does he challenge the prior restraint on direct appeal. Rather, Plaintiff seeks relief from the effects of a prior restraint that he "voluntarily" entered into only after the government's successful threat to obtain his "consent." This distinction should be of no significance. The fact that the prosecutors in this case actually succeeded in obtaining Berke's consent, if anything, makes this an even more compelling example of prosecutorial overreaching and only expands the need for effective judicial action. *See PHE,* 743 F.Supp. at 26 ("The only difference between this case and *Bantam Books* is that in *Bantam Books,* the officers' threats of prosecution were 'thinly veiled.' Here, in contrast, the threats of prosecution are real and direct.").

Certainly, prosecutors should, and do, have considerable discretion in reaching consent agreements with criminal and civil defendants. When such "consent" agreements, however, condition dropping criminal or civil charges on a surrender of constitutional rights, the judiciary has an obligation to ensure that a legitimate reason exists for seeking the waiver. *See Davies,* 930 F.2d at 1399. As this Court noted in *Davies,* "[t]he absence of a close nexus [between the specific interest the government seeks to advance in the dispute underlying the litigation and the specific right waived] will ordinarily show that the government is seeking the waiver of important rights without a legitimate governmental interest that justifies doing so." *Id.*

Any failure by the judiciary to satisfy that obligation is an open invitation to government to gather unto itself additional reins of power for controlling dissent; an invitation most governments in most places have been loathe to reject. In analyzing such threats, we would do well to remember the political atmosphere, and especially the Alien and Sedition Laws, which surrounded the passage of the First Amendment.

In those situations, the judiciary must ensure that the government has satisfied all three *Levine* criteria in seeking a prior restraint. This is just as true when the government seeks a *quid pro quo* for dropping a criminal prosecution as it is when the government seeks such a restraint following a criminal conviction. To find otherwise would effectively allow prosecutors a "carte blanche" to condition criminal settlements on waivers of constitutionally-protected rights. Clearly, such a result rests too much power in the

hands of prosecutors, and directly contradicts the important constitutional principle that prior restraints constitute "one of the most extraordinary remedies known to our jurisprudence," *Nebraska Press Ass'n,* 427 U.S. at 562, 96 S.Ct. 2791, and "have been recognized only in exceptional cases." *Near,* 283 U.S. at 716, 51 S.Ct. 625.

Second, and just as importantly, in not declaring the relevant part of the Consent Decree void, this Court is allowing the equitable powers of the judiciary to be used as a permanent means of suppressing Berke's First Amendment rights. Because the Consent Decree is "a permanent Order of the Court" and "punishable by the Court as for contempt and may also be enforced by an order of injunction," Mem. of Plea Agreement, CR 5, Tab 1, at 24, it constitutes a continuing application of the Court's power to Berke and his future activities. As such, the District Court—as does this Court—has a continuing obligation to ensure that its powers are not used in a manner that is no longer equitable. *See* Fed.R.Civ.P. 60(b)(5) (allowing relief from a judgment on the grounds that the "judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or vacated, or it is no longer equitable that the judgment should have prospective application").

As noted above, there is no evidence that the government satisfied the three *Levine* criteria for either imposing or maintaining a prior restraint on Berke's First Amendment activities. Accordingly, should Berke choose to deal again in sexually-explicit materials, and should the government seek to enforce the Consent Decree, the District Court would be called upon to enforce a court order that erroneously and unjustifiably permanently restricts Berke's constitutional rights. Surely, such a use—or misuse—of judicial powers constitutes a "public policy" that should be avoided, particularly when fundamental constitutional rights are at stake. To find otherwise would be to sacrifice Berke's First Amendment right to deal in sexually-explicit material for the stake of affirming the finality of an erroneous court order. This, I believe, we must not do.

In short, because I believe that important issues of judicial and prosecutorial policy outweigh the government's interest in seeking enforcement of the Consent Accord, I would reverse the decision of the District Court and find the portion of the consent decree which acts as a prior restraint on Berke's protected speech unenforceable—and thus void under Fed.R.Civ.P. 60(b)(4).