[No. 31199. *En Banc.* February 1, 1951.]

VEVA MARIE PEARCE, *Appellant,* v. LEO E. PEARCE, *Respondent.*[1]

[1] Reported in 226 P. (2d) 895.

*Bernard L. Swerland,* for appellant.

*A. W. Dolphin,* for respondent.

HAMLEY, J.—The propriety of a commitment for contempt and of a modification of a divorce decree by which the custody of children was changed, are questioned on this appeal.

We are here concerned with the aftermath of a divorce action in which the trial court found that the plaintiff wife, Veva Marie Pearce, had no grounds for divorce, but awarded a divorce to the defendant husband, Leo E. Pearce, on his cross-complaint.

The wife, however, was given the custody of the daughter, Judith, who was then (November 17, 1948) seven years old. The permanent custody of the son, John, who was then four years old, was not awarded to either party. He is mentally defective. The interlocutory decree provided that John would remain with the wife until he is

received at Lakeland Village, to which he had been committed.

As a part of the interlocutory decree, the trial court restrained the wife "from in any way associating or communicating with Art Kringel and from seeking employment . . . or being employed where he is employed." Mr. Kringel, although not a party to the action, was likewise restrained "from in any way associating or communicating with" Mrs. Pearce, and "from seeking employment or being employed where she may be employed."

Mrs. Pearce and Kringel did thereafter associate and communicate with each other. As a result, Mr. Pearce, on May 9, 1949, and prior to the entry of a final decree, instituted this proceeding requiring Mrs. Pearce and Kringel to show cause why they should not be punished for contempt. A show cause order was duly entered, and a hearing was set for May 24, 1949.

Mrs. Pearce filed an answer denying the allegations of the show cause motion and affidavit, and a cross-petition. She sought, by the cross-petition, a modification of the interlocutory decree to require Mr. Pearce to pay, in addition to the one hundred dollars monthly support money already provided in that decree, the sum of fifty dollars a month for the rental of an apartment. She asked, in the alternative, that the decree be modified to require that Mr. Pearce pay for the support of John, who needed special care, in a home properly equipped and suitable for the purpose. At the outset of the hearing, counsel for Mr. Pearce orally denied the allegations of the petition for modification of the decree, and orally cross-petitioned for a modification of the decree to give Mr. Pearce the custody of the children.

The hearing was held before the same judge who had heard the original divorce proceedings and had entered the interlocutory decree and restraining order. Numerous witnesses testified, including Mrs. Pearce and Kringel. The evidence was in conflict as to the extent of the association and communication which had been carried on between

Mrs. Pearce and Kringel since the entry of the interlocutory decree. The trial court's finding on this, as recited in the order of commitment, was as follows:

"That said Veva Marie Pearce and Art Kringel on May 7, 1949, were sitting together in the Blue Bell Tavern, in Spokane and were drinking, smoking and conversing with each other; that they were in the Pleasure Inn, in Spokane, at the same time on the 30th day of April; that they were in a drugstore at Napa and Mission in Spokane, on the 26th day of December, 1948 . . ."

Whether that association and communication was casual and unpremeditated, or was planned and willful, was disputed at the hearing and is hotly and extensively debated in the briefs. The trial court, in its oral opinion, expressed the view that these meetings were not mere accidents, and a finding to this effect is to be implied from the recitals of the order of commitment.

Following the hearing, and on May 31, 1949, two orders were entered. In one order, the trial court found Mrs. Pearce and Kringel guilty of contempt, by reason of a violation of the restraining order, and committed them each to the county jail for ten days. In the other order, the trial court granted Mr. Pearce's oral motion for modification of the decree to take the custody of the two children from Mrs. Pearce and give it to Mr. Pearce. This appeal was taken from both orders.

It is our view that the trial court had no authority to enter the restraining order, the violation of which was the basis for the contempt proceeding.

We recognize and approve the modern tendency to protect personal rights by injunctive relief where there is no adequate remedy at law. We have found cases where husbands have enjoined third parties from associating with their wives (*Witte v. Bouderer* 255 S. W. (Tex. Civ. App.), 1016; *Ex Parte Warfield*, 40 Tex. Crim. Rep. 413, 50 S. W. 933, 76 Am. St. 724); where wives have enjoined third parties from associating with their husbands (*Henley v. Rockett*, 243 Ala. 172, 8 S. (2d) 852; but *contra*, see *Snedaker v. King*, 111 Ohio St. 225, 145 N. E. 15); and where fathers

have enjoined third parties from associating with their daughters (*Stark v. Hamilton,* 149 Ga. 227, 99 S. E. 861, 5 A. L. R. 1041); but we have found nothing comparable to the present situation.

The husband here was not asking for the protection of the society and affection of his wife against interference by Mr. Kringel; he apparently did not want the one and had acquiesced in the loss of the other. He asked for a divorce and was awarded an interlocutory decree.

Respondent places considerable reliance upon the case of *Aubry v. Aubry,* 26 Wn. (2d) 69, 173 P. (2d) 121. In that case the only restraint placed on Mrs. Aubry was that when the child, whose custody was awarded to the father, was permitted to visit her she could not be in the company of the man who the court found was responsible for the difficulties which had led to the separation. For the reasons there given, that seems to us a proper restraint, designed for the protection of the child from an influence which the trial court felt would be detrimental to its well being. The restraining order in the present case was sweeping and all-inclusive, so far as any association or communication between Mrs. Pearce and Kringel was concerned.

We are of the view that the restraining order was an attempted extension of the equity power beyond any proper limits, and that it amounted to an unwarranted and unjustified interference with the personal rights of Mrs. Pearce. (Kringel has not appealed.) As was said in *Snedaker v. King, supra:*

"The decree in this case is an extreme instance of government by injunction. It attempts to govern, control, and direct personal relations and domestic affairs." (p. 228)

While we hold that the trial court exceeded its authority in entering the restraining order on which the contempt order is predicated, we cannot but feel that it was intended for the wife's protection, and that she would have been much better off had she obeyed it. However, courts cannot stand *in loco parentis* to adults like Mrs. Pearce,

and, under the pains and penalties of contempt, restrain them from doing those things which they ought not to do, except as those things come within the orbit of matters which affect the welfare of the child or children concerned. As we have indicated, the restraining order under review is not limited in scope to this permissible field of injunctive relief.

Respondent contends that appellant cannot escape the consequences of her disobedience of the restraining order by making this collateral attack upon that order.

■ The purport of our holding is that the restraining order is void, being in excess of the jurisdiction of the court. This brings the case within the rule that, where the order is absolutely void, and not merely erroneous, the invalidity of the order, in and of itself, works a purging of contempt. *State v. Lew,* 25 Wn. (2d) 854, 172 P. (2d) 289.

We again pass, as in *Corrigeux v. Corrigeux, ante* p. 403, 224 P. (2d) 343, the question of the propriety of a purely punitive commitment for contempt for a fixed term in a civil contempt proceeding.

We have now to consider the appeal from the order modifying the interlocutory decree of divorce as to the custody of the children.

The interlocutory decree, as before indicated, did not award permanent care, custody or control of the minor son, John, to either party. It simply provided that he would remain with appellant until he was received at Lakeland Village, to which he had been committed. John had not been received at Lakeland Village up to the time of the hearing under review. The prospect was that it would be another six months before he would be so received. The interlocutory decree did award to appellant the care, custody and control of Judith, subject to respondent's right of visitation. The order of modification removed the care of John and the custody of Judith from appellant, and gave respondent the custody of both, the custody of John to expire when he is received at Lakeland Village.

■ Subject to the rule that each case must be determined upon its own peculiar facts, there are three basic principles to be applied in reviewing an award of custody of minor children: (1) The welfare of the child or children is the primary consideration; (2) in awarding the custody of young children, the mother, if she desires the custody of her children and is morally and physically fit, is generally given such custody; and (3) great weight is accorded to the decision of the trial court which had the benefit of hearing the witnesses. *Schorno v. Schorno*, 26 Wn. (2d) 11, 172 P. (2d) 474.

■ Where the order under review, as in this case, modifies a previous order as to custody, there is the further rule that the party desiring the change has the burden of showing that since the last order fixing custody new conditions have arisen which require a readjustment (*White v. White*, 24 Wn. (2d) 52, 163 P. (2d) 137; *Schorno v. Schorno, supra*); and that the new custodian is a fit and proper person to have such custody (*Allen v. Allen*, 28 Wn. (2d) 219, 182 P. (2d) 23).

The order under review contains no express findings as to changed conditions, other than the recital that Mrs. Pearce violated the restraining order. If this is the only ground on which the court acted, the order taking the children from the custody of their mother could not be sustained, in view of our ruling that the restraining order was invalid. There is some evidence in the record, however, tending to show that Mrs. Pearce absented herself from her home on occasion, to the possible prejudice of the children. If the trial court intended to find that this indicated the existence of new conditions requiring a change of custody, we would not be disposed to disturb the custody order in so far as it removes the children from the mother's custody.

■ Since we are unable to determine which of these reasons motivated the trial court, we cannot determine what weight should be given to its findings, and are accordingly handicapped in reviewing this part of the custody order.

The principles governing modification of divorce decrees or prior orders as to custody require, as before indicated, that there be not only a showing of new conditions demanding a change, but that the new custodian is a fit and proper person to have such custody.

The evidence is far from satisfactory that the best interests of Judith, the nine-year-old daughter, would be served by placing her under the custody of her father. We need not be as concerned in the case of the boy, since it is expected that he will shortly be received by Lakeland Village, if this has not already happened.

While appellant is thirty-one years of age, respondent is a man of sixty. He is employed and away from home all day. It would be necessary for him to arrange for someone else to care for the little girl during the day. Under such circumstances, the best of fathers would be handicapped in making a good home and providing parental guidance for a nine-year-old girl, who shortly will be entering her adolescence. There is also much evidence in the record to indicate that respondent was not on all occasions "the best of fathers."

Unless respondent can present a plan for the girl's care in his home which convinces the trial court that the child will have a home atmosphere and training adequate to her needs, it may well be that she should be placed in a suitable foster home. See *Allen v. Allen,* 28 Wn. (2d) 219, 182 P. (2d) 23; *Braun v. Braun,* 31 Wn. (2d) 468, 197 P. (2d) 442.

In view of the state of the record with respect to both aspects of the custody order, we believe that this order should be remanded for further proceedings, as directed below.

It is our opinion that the order captioned "ORDER ADJUDGING VEVA MARIE PEARCE AND ART KRINGEL GUILTY OF CONTEMPT," should, in so far as it adjudges Veva Marie Pearce to have been guilty of contempt, be set aside and held for naught.

It is also our opinion that the order captioned, "ORDER MODIFYING INTERLOCUTORY DECREE OF DIVORCE," providing that the custody of John Leo Pearce and Judith Marie

Pearce be awarded to Leo E. Pearce, should be set aside and held for naught, and that the custody issue should be remanded to the trial court with instructions to again examine the whole question of custody, entirely apart from any question of the violation of the restraining order, which was the basis of the contempt proceeding, and to receive such additional evidence on the custody issue as the parties may offer or the trial court may require, and then to make such order as seems to it proper under all the circumstances, which order shall be subject to further review by this court.

It is so ordered.

SCHWELLENBACH, C. J., MALLERY, ROBINSON, BEALS, HILL, GRADY, and DONWORTH, JJ., concur.