IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Plaintiff,<br><br>     v.<br><br>STEVEN CHAMPEAU,<br><br>               Respondent,<br><br>DEPARTMENT OF CORRECTIONS,<br><br>               Appellant. | No. 86371-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — After the Washington State Department of Corrections (DOC) denied visitation applications submitted by Steven Champeau's wife on behalf of their children, Champeau moved the sentencing court for an order to show cause, seeking to hold DOC in contempt. The court found DOC in contempt and ordered it to immediately permit Champeau to have in-person and/or video visits with his minor children. We reverse and remand for the sentencing court to vacate the contempt order.

FACTS

Champeau, in August 2023, pleaded guilty to six counts of rape of a child in the third degree under RCW 9A.44.079 and three counts of child molestation in the third degree under RCW 9A.44.089. In exchange for the plea to all counts, the State agreed to not pursue the statutory aggravating circumstance. That same day, the trial court

sentenced Champeau to a 60-month term of confinement in the custody of Washington State DOC for each count to be served concurrently. In addition to several other conditions, the judgment and sentence (J & S) provided that Champeau not have contact with two victims. The J & S noted that "[a]lthough Defendant is being placed on mandatory 36 months of community custody, because the commit time is the statutory maximum, no community custody will be functionally imposed." The court, nonetheless, ordered Champeau to 36 months of community custody for each count.

Appendix H of the J & S addresses "COMMUNITY PLACEMENT/CUSTODY." It states "Community placement/custody is to begin either upon completion of the term of confinement or at such time as the defendant is transferred to community custody in lieu of early release."[1] Appendix H addresses both mandatory conditions and crime-related conditions "during the term of community placement/custody." In the middle of the listed crime-related conditions is a handwritten addition: "The defendant's biological children may have contact, including in-person contact, while he is in the Department of Corrections."[2] Other listed community placement/custody crime-related conditions include not having contact with minors, completing a sexual deviancy evaluation and complying with any recommended treatment.

---

[1] There are two types of community placement—"community custody" and "postrelease supervision." RCW 9.94B.020(1). "Community custody" is a portion of an offender's confinement (in lieu of earned release time or imposed by the court) served in the community while the offender is monitored by DOC. RCW 9.94A.030(5). "Post-release supervision" is "that portion of an offender's community placement that is not community custody." RCW 9.94B.020(3). See In re Smith, 139 Wn. App. 600, 603 n.1, 161 P.3d 483 (2007) (discussing these provisions when they were previously codified under RCW 9.94A.030).

[2] The record does not include the verbatim report of proceedings from the August 8, 2023, sentencing hearing. However, the record suggests it was the court who wrote the handwritten portion.

In October, DOC denied Champeau's wife's application for their biological children to have visiting privileges, including by video. The letter of denial explained that it was because of "the nature of the crime of conviction."[3] On December 8, DOC denied Champeau's wife's appeal of the denial.[4]

On December 14, the court entered an agreed order modifying the J & S:

> THE COURT FINDS that the original judgment and sentence contained an error which caused the defendant's sentence to exceed the standard range. The defendant's motion is granted. The judgment and sentence is modified and corrected as follows: community custody is imposed for 0 (zero) months. All other conditions of the original judgment and sentence remain the same.

In January 2024, Champeau filed a motion for an order directing DOC to appear and show cause as to why an order finding contempt and imposing sanctions under RCW 7.21.020 should not be entered. Relying on the handwritten portion in Appendix H of the J & S, Champeau asserted that DOC was in "willful disobedience of a lawful court order, and has refused without lawful authority to allow the defendant to have visits with his biological children pursuant to the judgment and sentence." Champeau requested in his written motion that the court impose monetary sanctions and order "immediate compliance with the court's original order regarding the defendant's ability to have visitation with his minor children."

---

[3] The letter also noted that Champeau "has not participated in any court ordered treatment" and that one of the children was considered a "like victim" to the victim in the current crime of conviction.

[4] The Champeau family therapist, a licensed clinical social worker, submitted a letter as part of the appeal in support of video and in-person visitation between Champeau and his children.

DOC, represented by the Attorney General's Office, filed a response asserting that it is not a party to the action, and that a sentencing court does not have jurisdiction to order DOC to comply with specific conditions.[5]

At the show cause hearing in January 2024, Champeau, who was represented by the same counsel who represented him at his sentencing, asserted that DOC's denial of the in-person and video visits was "arbitrary and capricious." Champeau argued that part of what he bargained for when he entered his plea "was that provision that the court decided would be appropriate to put into the judgment and sentence, that he would still be able to have contact with the two minor children he shares with [his wife.]" DOC maintained that it is not a party to the underlying criminal proceeding, and that if Champeau wanted to challenge his conditions of confinement, he could file a civil rights lawsuit against DOC or file a personal restraint petition (PRP). The State asserted the allegations that DOC's denial of visitation was arbitrary and capricious is a standard of review applied in a PRP. The court found DOC in contempt and ordered it to immediately permit Champeau to have in-person and/or video visits with his minor children.

DOC appeals.

## DISCUSSION

### Waiver

Champeau argues that DOC waived any challenge to the sentencing court's authority to allow visitation between him and his children when it did not seek review of the J & S. Specifically, Champeau argues that DOC is not free to simply ignore or

---

[5] In the alternative, DOC asserted it has statutory authority to restrict visitation, and that legitimate penological concerns necessitated denial of visitation of Champeau's minor children.

refuse to implement a sentence provision and must, under RCW 9.94A.585(7), timely seek review of a sentence it believes requires correction. Otherwise, DOC is statutorily barred from doing so later.

Interpretation of a statute is a question of law reviewed de novo. State v. Bright, 129 Wn.2d 257, 265, 916 P.2d 922 (1996).

RCW 9.94A.585(7) provides a means for DOC to appeal errors of law in a sentence, demonstrating an acknowledgment by the legislature that DOC cannot alter a judgment on its own. RCW 9.94A.585(7) provides:

> The department may petition for a review of a sentence committing an offender to the custody or jurisdiction of the department. The review shall be limited to errors of law. Such petition shall be filed with the court of appeals no later than ninety days after the department has actual knowledge of terms of the sentence. The petition shall include a certification by the department that all reasonable efforts to resolve the dispute at the superior court level have been exhausted.

DOC is not authorized to correct an erroneous judgment and sentence. State v. Broadaway, 133 Wn.2d 118, 135-36, 942 P.2d 363 (1997). The requirements of RCW 9.94A.585(7) are strictly construed. Matter of Sentence of Hilborn, 63 Wn. App. 102, 104-05, 816 P.2d 1247 (1991). If DOC does not timely file the petition, then it is statutorily barred from arguing legal errors existed in a sentence at a later date. Matter of Milne, 7 Wn. App.2d 521, 524, 435 P.3d 311 (2019).

Champeau cites to Dress v. Wash. State Dep't of Corr., 168 Wn. App. 319, 279 P.3d 875 (2012). In Dress, preprinted language in the J & S form stated that "[a]ll counts shall be served concurrently." Id. at 323. DOC believed the sentences imposed should run consecutively to a prior sentence in another county. Id. DOC sent a May 2006 letter requesting the court amend its J & S but did not get a response. Four years later, a

5

week before Dress' scheduled early release, DOC told Dress that her sentences were to run consecutively to her other prior sentence. Id. at 324. Dress moved for an order from the court that ordered her sentences concurrent to compel her release. The court, over DOC's objection, granted the motion. Id. This court observed that DOC "knew of what it characterizes as an erroneous April 2006 sentence in May 2006" and inexplicably chose to ignore RCW 9.94A.585(7)'s express statutory mechanism for review of alleged errors of law in Dress' J & S by failing to petition for review within 90 days of its May 2006 letter. Id. at 327. This court held that it was unnecessary to decide if the J & S contained an error of law because DOC did not avail itself of RCW 9.94A.585(7) and had no authority to either correct or ignore the final J & S. Id. at 329.

Dress is distinguishable. There, DOC "knew" of the claimed error and did not timely petition for review to correct what it believed to be an error. In the instant case, nothing in the record establishes that DOC "knew" of the claimed error within 90 days of the original sentence.

The original J & S stated, "The defendant's biological children may have contact, including in-person contact, while he is in the Department of Corrections." (Emphasis added.) This language is listed under "crime-related conditions," which apply "during the term of community placement/custody" in Appendix H of the J & S. Appendix H explains that "[c]ommunity placement/custody is to begin either upon completion of the term of confinement or at such time as the defendant is transferred to community custody in lieu of early release." The plain reading of Appendix H along with the court's imposition of community custody suggests this handwritten condition relates to when Champeau begins community custody. When the parties entered the agreed order to modify the J &

S on December 14, 2023, Champeau's wife had already been denied her application to allow her minor children with Champeau to visit him. The order made no mention of visitation by the minor children.[6] The December 14 order simply stated that the J & S is "modified and corrected as follows: community custody is imposed for 0 (zero) months. All other conditions of the original judgment and sentence remain the same." By eliminating community custody, the plain reading of the J & S suggests that the conditions related to community custody were of no matter.

The 90-day window in which DOC may petition for review of a sentence begins after DOC has "actual knowledge" of terms of the sentence. RCW 9.94A.585(7). The record does not establish that DOC had actual knowledge, prior to the contempt hearing, that the court had <u>required</u> DOC to allow Champeau visitation with his minor children. The court's J & S order that Champeau "may" have contact with his biological children under "community placement/custody" section could not reasonably be understood as an error of law. Accordingly, we disagree with Champeau and conclude that DOC has not waived any challenge to the sentencing court's authority to order DOC to allow visitation from Champeau's minor children.

Personal Jurisdiction

The State argues that the sentencing court did not have personal jurisdiction over DOC, therefore the court erred when it held DOC in contempt of the original J & S. We agree.

---

[6] The verbatim report of proceedings for this hearing was not designated in this appeal. Though Champeau was represented by the same defense counsel who represented him at his sentencing, nothing in the record indicates that counsel was aware of the visitation denial at the time of the December 14 hearing.

Personal jurisdiction affords a tribunal the prerogative to subject and bind a particular person or entity to its decisions. Downing v. Losvar, 21 Wn. App. 2d 635, 653, 507 P.3d 894 (2022). With few exceptions, a court lacks personal jurisdiction over an individual or entity if they have not been named as a party and have not been made a party by service of process. City of Seattle v. Fontanilla, 128 Wn.2d 492, 502, 909 P.2d 1294 (1996). If a court lacks personal jurisdiction over a party, any order entered against that party is void. Dep't of Soc. & Health Servs. v. Zamora, 198 Wn. App. 44, 73, 392 P.3d 1124 (2017).

As in the instant case, when the facts relevant to jurisdiction are undisputed, we review a trial court's assertion of personal jurisdiction de novo. Zamora, 198 Wn. App. at 73 (citing Pruczinski v. Ashby, 185 Wn.2d 492, 499, 374 P.3d 102 (2016)). Challenges to a trial court's authority are also reviewed de novo. Id. Challenges to a trial court's contempt orders are reviewed for abuse of discretion. State v. Noah, 103 Wn. App. 29, 45, 9 P.3d 858 (2000) (citing State v. Caffrey, 70 Wn.2d 120, 122-23, 422 P.2d 307 (1966)).

DOC, citing Matter of Gossett, 7 Wn. App. 2d 610, 624, 435 P.3d 314 (2019), argues that it must be named as a party or served with process in order to fall within a court's jurisdiction, especially when the court seeks to dictate an inmate's conditions of confinement. In Gossett, the petitioner was convicted of rape of a child in the second degree and child molestation in the second degree. Id. at 614. The superior court's J & S initially prohibited Gossett from having contact with any minor, including his own children. Id. Two months later, the court entered an agreed order amending and clarifying the J & S to allow Gossett supervised visitation with his children in the normal

8

course of the visitation process followed by DOC. DOC denied the children's visitation request, citing its internal policies and statutory authority to regulate inmate visitation for safety and operational reasons. Id. at 614. Gossett, through a PRP, sought to enforce the court's order.

The Gossett court agreed with the State that DOC did not violate the superior court's order because the superior court did not have personal jurisdiction to order DOC to provide supervised visitation. Id. at 624-25. At the time the superior court imposed supervised visitation duties on DOC, the parties were Gossett, appearing through his attorney, and the State, appearing through the Thurston County prosecuting attorney. The order did not indicate that DOC was represented at the hearing. Because the record did not show that DOC was designated a party or made a party by service of process, the Gossett court concluded that the superior court did not have personal jurisdiction to impose conditions related to supervised visitation on DOC. Id. Accordingly, the court concluded that the provisions in the superior court's order entered against DOC relating to visitation were not binding on DOC as a matter of law. Id. at 625.

Gossett is analogous to the instant case. At Champeau's sentencing, the defendant, his attorney, and the State, appearing through the Whatcom County prosecuting attorney, were present. The J & S does not indicate that DOC was represented at the hearing. Nor does the record indicate that DOC was designated a party or made a party by service of process. As the Gossett court observed, "[o]f course, directions to DOC to accept and hold a prisoner are an inherent part of any sentence of imprisonment, and DOC need not for that reason be made a party for all

such sentencings." Id. At the same time, an order pertaining to the routine management of one of DOC's prisoners is unlike "a typical sentencing after conviction." Id.

Champeau argues that the sentencing court used its contempt power to enforce the original J & S and "because the court was not amending the judgment or sentence, the Department need not be made a party prior to the contempt finding." This ignores the fact that the contempt finding was based on DOC not enforcing the "original" J & S. Assuming, without deciding, that the original J & S requires DOC to permit visitation by Champeau's children, DOC was not a party to the original sentence and the court's order relating to the visitation is not binding on DOC as a matter of law. See Gossett, 7 Wn. App. 2d at 625.

"A contempt order may be reversed if the underlying order is void." Noah, 103 Wn. App. at 46. An underlying order is void if the court that issued the order lacked jurisdiction to do so. Id. To the extent the original J & S could even be interpreted as requiring DOC to allow visitation from Champeau's minor children, we reverse the contempt finding because the court did not have jurisdiction over DOC to do so.

Statutory Authority

Because the sentencing court's January 2024 order expressly ordered DOC to immediately permit Champeau to have in-person and/or video visits with his minor children, we must separately address this issue. The State contends that the sentencing court exceeded its statutory authority when it ordered DOC to grant Champeau visitation privileges to see his minor children. Champeau does not present any argument challenging this assertion. We agree with the State.

Whether a trial court had the statutory authority to impose a sentencing condition is a matter of statutory interpretation and the standard of review is de novo. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

DOC has broad discretion and statutory authority to manage visitation policies, including the denial of visitation when necessary for the safety and security of inmates, staff, and visitors. RCW 72.01.050(2) and RCW 72.01.090 grants the DOC exclusive authority to determine visitation eligibility and conditions, emphasizing the executive agency's autonomy in administering correctional facilities. Additionally, our Washington Supreme Court held that "[i]t is not in the best interest of the courts to involve themselves in the 'day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone.'" In re Pers. Restraint of Dyer, 143 Wn.2d 384, 393, 20 P.3d 907 (2001) (quoting Sandin v. Conner, 515 U.S. 472, 482, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). Moreover, it is the superintendent of each correctional institution that is "responsible for the supervision and management of... the prisoners committed, admitted, or transferred to the institution." RCW 72.02.045(1).

The sentencing court had no authority to direct DOC to immediately permit Champeau to have in-person and/or video visits with his minor children.[7]

---

[7] Whether DOC's decision denying the visitation application was arbitrary and capricious is not a question directly before us in this appeal.

We reverse and remand for the sentencing court to vacate the contempt order.

_____Cohen, J._____

WE CONCUR:

_____Feldman, J._____          _____Mann, J._____